972 S.W.2d 203 (1998)
In the Matter of K.L.C.
No. 09-98-013 CV.
Court of Appeals of Texas, Beaumont.
Submitted June 24, 1998.
Decided August 13, 1998.
*204 Thomas J. Burbank, Beaumont, for appellant.
Tom Maness, Criminal District Attorney, Randi King, Assistant Criminal District Attorney, Beaumont, for state.
Before WALKER, C.J., and BURGESS and STOVER, JJ.

OPINION
STOVER, Justice.
K.L.C., a juvenile, was charged with aggravated assault with a deadly weapon. K.L.C. pleaded true to the allegations in the State's petition. The trial court proceeded to the disposition stage and concluded it was in the best interest of the child that K.L.C. be placed in the custody of the Texas Youth Commission (TYC). From that determination, K.L.C. appeals raising two points of error.
In her first point, K.L.C. questions "Whether the court erred due to being provided the wrong sanction guidelines for determining the juvenile's disposition." K.L.C.'s brief recognizes the Juvenile Probation Officer correctly informed the trial court that "The Progressive Sanctions Guideline is level 4, which is Intensive Supervision." It is apparently the officer's next statement, "The recommended level is either level 4(ISP), level 6(TYC), whichever the judge chooses," of which K.L.C. complains.
K.L.C.'s brief provides no explanation as to how the officer's recommendation translates into reversible error by the trial court; nor is *205 any authority cited in support of such a proposition. See TEX. R. APP. P. 38.1(h). The record does not reflect the trial court made a sanction level assignment and failure to do so in accordance with Tex. Fam.Code Ann. § 59.003 (Vernon 1996) is not appealable. Tex. Fam.Code Ann. § 59.014 (Vernon 1996). If it is the admission of the officer's report, Analysis of the Factors, as Exhibit No. 4 that K.L.C. complains of, the record contains no objection preserving such a complaint for appellate review. See TEX. R. APP. P. 33.1. Point of error one is overruled.
Though K.L.C.'s second point of error questions the factual sufficiency of the evidence to commit her into the care and custody of the Texas Youth Commission, the brief clearly argues that the evidence was legally insufficient to establish (1) her parent could not provide the care and level of support and supervision needed to meet the conditions of probation, and (2) reasonable efforts had been made to prevent or eliminate the need to remove her from the home. We therefore address the issues fairly presented in K.L.C.'s brief. See TEX. R. APP. P. 38.1(e).
K.L.C. was fifteen years old at the time of the disposition hearing. A stipulation of evidence was admitted which stated that K.L.C. "did then and there, intentionally and knowingly and recklessly cause bodily injury to [S.P.], ... by a box cutter, that in the manner of its use and intended use is capable of causing death and serious bodily injury by cutting [S.P.] with the box cutter." Also admitted into evidence was the Analysis of Factors prepared by Ruth Hall, Juvenile Probation Officer. It contained a summary of the incident. According to the police report, K.L.C. and S.P. got into a verbal argument which escalated into a physical fight. K.L.C. pulled a box cutter from her bra and cut S.P. in the forehead (10-12 inches) and on the fists and hands. K.L.C. tried to spray S.P. with mace and hit S.P. with her fist and hands. S.B. pulled K.L.C. off S.P. and in the process was cut on her right arm. S.P. threw a desk at K.L.C. K.L.C. dropped the box cutter and ran from the room.
In her report, Hall stated concerns about the parenting skills of K.L.C.'s mother due to her not getting K.L.C. medical care for female problems which K.L.C. has had since the summer. Hall also felt K.L.C.'s mother minimized her offenses.
According to Hall's report, K.L.C. has been referred to the school office for class disruption (two times), excessive tardies (four times), disruption in the hall, fighting (two times), failure to obey the teacher, assault on a student, dress code, and insubordination (three times). K.L.C. was released on home detention; part of that detention was that she not have contact with anyone outside the home. Fourteen days later she was placed back in detention when it was learned from a letter K.L.C. wrote to a friend that she was having sex while on home detention.
The report also stated that Dr. Ray Coxe conducted a psychological assessment and diagnosed K.L.C. with impulse control disorder. Dr. Gripon conducted two psychiatric exams and reported K.L.C. was reportedly sexually abused at ages 10 and 12 by two different men. Hall recommended K.L.C. "be committed to TYC due to the premeditated and aggressive manner in which the act was committed. [K.L.C.] does not seem to realize how serious her actions were."
K.L.C. testified she brought the box cutter to school because she did not feel safe. According to K.L.C., the victim and a group of girls had been harassing her daily. K.L.C. said she realized what she did was wrong and taking a weapon to school was not the way to settle things. K.L.C. asked the court to place her on probation and said she would be able to follow the rules. K.L.C. said she had never been in trouble "like this" with the Juvenile Probation Department. She admitted she had been in trouble and fought at school before. Hall testified K.L.C. had not been in Juvenile Probation for any other offense. Hall answered, "No" when asked, "has your agency ever worked with [K.L.C.] in any type of program to see whether or not your agency can rehabilitate her instead of sending her to T.Y.C.?" Counsel then asked, "So, you haven't given her a chance of whether or not she has learned her lesson in that she can correct her mistakes?" Hall replied, "No." According to Hall, K.L.C. had not shown any remorse for her actions and felt *206 charges should have been filed against the victim for scratching her.
K.L.C. contends no evidence was presented that her parent could not provide the care and level of support and supervision needed to meet the conditions of probation. Further, that there was no evidence establishing reasonable efforts had been made to prevent or eliminate the need to remove her from the home.
In a juvenile case, the trial court possesses broad discretion to determine a suitable disposition of a child who has been adjudicated to have engaged in delinquent conduct. In the Matter of J.R., 907 S.W.2d 107, 110 (Tex.App.Austin 1995, no writ); In the Matter of R.W., 694 S.W.2d 578, 580 (Tex.App.Corpus Christi 1985, no writ). Absent an abuse of discretion, we will not disturb the juvenile court's findings. [In the Matter of C.C., 930 S.W.2d 929, 930 (Tex.App.Austin 1996, no writ) ]; [In re J.J., 916 S.W.2d 532, 535 (Tex.App.Dallas 1995, no writ)]; [In the Matter of J.P.O., 904 S.W.2d 695, 698 (Tex.App. Corpus Christi 1995, writ denied)].... In reviewing a factual insufficiency point, we consider and weigh all of the evidence in the case, and, if the finding is so against the great weight and preponderance of the evidence as to be manifestly unjust, we set aside the judgment and remand for a new trial. J.J., 916 S.W.2d at 535-36; J.P.O., 904 S.W.2d at 700; [In the Matter of G.F.O., 874 S.W.2d 729, 731-32 (Tex. App.Houston [1st Dist.] 1994, no writ)].
The juvenile court's exercise of discretion in making an appropriate disposition is guided by the requirements of Section 54.04 of the Family Code. Section 54.04(c) provides that the trial court may not make a disposition placing a juvenile outside of his home unless the court finds that the child, in the child's home, cannot be provided the quality of care and level of support and supervision that the child needs to meet the conditions of probation. TEX. FAM.CODE ANN. § 54.04(c). Further, in order to commit a child to the Texas Youth Commission, the court must additionally find and state in its disposition order that placement outside of the child's home is in the child's best interest and that reasonable efforts were made to prevent or eliminate the need for the child's removal from the home. TEX. FAM.CODE ANN. § 54.04(i).
In the Matter of A.S., 954 S.W.2d 855, 861-62 (Tex.App.El Paso 1997, no writ).
The record does contain some evidence that K.L.C.'s parent could not provide adequate supervision. K.L.C. was given home detention prior to the disposition hearing but was placed back in detention for failure to comply with the conditions of home detention. No evidence was introduced indicating K.L.C.'s parent would supervise her as needed to meet probation conditions after failing to do so in regards to home detention. Viewing the evidence in the light most favorable to the trial court's ruling, we find the evidence legally sufficient to support the trial court's determination that K.L.C.'s parent could not provide adequate supervision.
As to K.L.C.'s second contention that there was no evidence reasonable efforts had been made to prevent or eliminate the need to remove her from the home, we agree. No evidence was introduced that any effort was made to find an alternative to committing K.L.C. to the custody of TYC. On the contrary, when questioned whether efforts "to see whether or not your agency can rehabilitate her instead of sending her to T.Y.C." were made, Hall answered, "No." Accordingly, the trial court's finding that "reasonable efforts were made" is wholly unsupported by the record. "While we may not substitute our decision for the trial court's decision, we also may not affirm its decision when there is no evidence in the record to support the conclusions made." In the Matter of L.G., 728 S.W.2d 939, 945 (Tex.App. Austin 1987, writ ref'd n.r.e.). After all, "[o]ne of the many reasons underlying the Tex. Fam.Code § 54.04(f) requirement that the trial court specifically state its reasons for the disposition ordered is that it furnishes a basis for the appellate court to determine whether the reasons recited are supported by the evidence and whether they are sufficient to justify the order of disposition. In the Matter of N.S.D., 555 S.W.2d 807, 809 (Tex.Civ.App.El Paso 1977, no writ)." Id. at 944-45. Accordingly, point of error two is *207 sustained. The disposition order is reversed and this cause is remanded for a new disposition hearing. Tex. Fam.Code Ann. § 56.01(I) (Vernon 1996).
REVERSED AND REMANDED.
WALKER, Chief Justice, dissenting.
I must respectfully dissent to the majority's disposition of point of error two which complained of the lack of factually sufficient evidence "to commit the juvenile into the care and custody of the Texas Youth Commission." As I appreciate the mechanics of the Family Code provisions involved, K.L.C.'s complaint is with action taken by the trial court in the disposition hearing, not in the adjudication hearing. I will explain why this distinction is significant to me and to the ultimate result of the issue.
Section 54.03 of the Family Code describes the process that is due a juvenile who is facing allegations of having engaged in delinquent conduct or conduct indicating a need for supervision. The rights and privileges under § 54.03 are virtually identical to those provided to an adult criminal defendant facing a criminal trial. Significantly, the juvenile has a right to have a jury determine the issue of whether or not she engaged in delinquent conduct or engaged in conduct indicating a need for supervision. See § 54.03(b)(6). Once a determination is made that the juvenile engaged in the prohibited conduct in question, the trial court "shall" set a date and time for the disposition hearing. See § 54.03(h).
Section 54.04 of the Family Code contains the provisions describing the disposition hearing process. Section 54.04(a) reads as follows:
(a) The disposition hearing shall be separate, distinct, and subsequent to the adjudication hearing. There is no right to a jury at the disposition hearing unless the child is in jeopardy of a determinate sentence under Subsection (d)(3) or (m) of this section, in which case, the child is entitled to a jury of 12 persons to determine the sentence. [emphasis supplied]
TEX. FAM.CODE ANN. § 54.04(a) (Vernon 1996).
In the instant case, K.L.C. was not in jeopardy of a determinate sentence. Therefore, the statute totally precluded anyone except the trial judge from determining the placement of the juvenile. Having no right to a jury trial under the circumstances presented in the instant case, the trial court's decision as to placement of the juvenile must be reviewed under an abuse of discretion standard, not the legal sufficiency review standard used by the majority. The majority quotes from an opinion out of the El Paso Court of Appeals, In the Matter of A.S., 954 S.W.2d 855, 861-62 (Tex.App.El Paso 1997, no writ). I am uncomfortable with the El Paso Court's observation that while the trial court possesses broad discretion to determine a suitable disposition of a child who has been adjudicated to have engaged in delinquent conduct and that absent an abuse of discretion, the reviewing court will not disturb the juvenile court's finding, the reviewing court nevertheless is permitted to engage in a factual sufficiency review of whatever occurred at the disposition hearing.
Under the particular facts and procedural format of the instant case, once the jury found K.L.C. had engaged in delinquent conduct, § 54.04 mandated that her placement be determined by the trial court. In my humble opinion, the clear intent of the statute is that any placement decision made by the trial judge is to be reviewed by an abuse of discretion standard. See In the Matter of L.G., 728 S.W.2d 939, 944 (Tex.App.Austin 1987, writ ref'd n.r.e.)[In challenging trial court's order of disposition in delinquency proceedings on appeal, juvenile must show that the trial court abused its discretion in making its disposition.] Under an abuse of discretion standard, legal and factual insufficiency are not independent grounds for asserting error but are, on the other hand, relevant factors in assessing whether the trial court abused its discretion. See Doyle v. Doyle, 955 S.W.2d 478, 479 (Tex.App.Austin 1997, no writ); D.R. v. J.A.R., 894 S.W.2d 91, 95 (Tex.App.Fort Worth 1995, writ denied); Mai v. Mai, 853 S.W.2d 615, 618 (Tex.App.Houston [1st Dist.] 1993, no writ).
*208 In the instant case, the trial judge clearly stated, on the record, that he was placing K.L.C. in the custody of the Texas Youth Commission "because it is in the best interest of you, the child; and the child's home cannot provide the quality of care and level of support, supervision that you need to meet the conditions of probation. Your educational needs will be met through the Texas Youth Commission." In making this decision, the trial court simply did not abuse its discretion in the matter. K.L.C. testified that she had been released once from juvenile detention. My interpretation of this was that the trial court was giving her "a chance." However, K.L.C. spoiled her "chance" and was brought back to detention because she violated the rules by corresponding with another girl who was in detention. The letter in question and written by K.L.C. contained information that K.L.C. was having sex while on "home detention" having her "chance" from the trial court. Although claiming not to be a "problem child," K.L.C. also admitted that she fought in school. State's Exhibit 4, which was admitted without objection by K.L.C., indicated that since 1994, K.L.C. had been referred to the office at her school several times for the following reasons: class disruption (two times); excessive tardiness (four times); disruption in the hall; fighting (two times); failure to obey the teacher; assault on a student; dress code violation; and insubordination (three times). The same exhibit, compiled by K.L.C.'s probation officer, indicated that her mother "appears to minimize the offenses against [K.L.C.]" K.L.C.'s father is currently incarcerated in the Texas Department of Criminal JusticeInstitutional Division.
From the evidence presented to the trial court, reasonable efforts had been made to eliminate the need to remove K.L.C. from the home and send her to Texas Youth Commission. The chance that was provided to K.L.C. resulted in her violating the terms of her release and being sent back to detention. Based upon this as well as her history of disruptive behavior and apparent complete lack of parental guidance or concern, I simply cannot say that the trial court abused its discretion in placing K.L.C. with the Texas Youth Commission. Because the majority finds otherwise, I must dissent.