NO. 07-10-0194-CV

 

IN THE
COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL E

 

MAY 17, 2011

_____________________________

 

In the
Matter of A.O. 

_____________________________

 

FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;

 

NO. 2009-763,299; HONORABLE LES HATCH, PRESIDING

_____________________________

 

Opinion

_____________________________

 

Before QUINN, C.J., PIRTLE,
J., and BOYD, S.J.[1]

            Appellant challenges his
adjudication of delinquent conduct and his commitment to the Texas Youth
Commission (TYC) by contending 1) the trial court erred in denying his motion to
suppress, 2) the evidence was factually insufficient to show that he
participated in the offense which constituted delinquent conduct, and 3) the
evidence was factually insufficient to meet one of the statutory requirements
for commitment to TYC.  We affirm the
judgment and order.  

            Motion to Suppress

The State sought to have appellant adjudicated for engaging
in delinquent conduct due to his particpation in a burglary of the A-Plus
Storage facility on January 18, 2010. 
Appellant moved to suppress evidence connecting him to the offense
because the police allegedly had no reasonable suspicion to stop the vehicle in
which he was a passenger.  The trial
court overruled the motion.  We review
the trial court’s decision under the standard discussed in Ford
v. State, 158 S.W.3d
488, 493 (Tex. Crim. App. 2005).  It
requires us to defer to the factfinder’s resolution of historical facts but
enables us to review de novo interpretations and applications of the law.  Id. at 493.  We next note that an officer may detain a
vehicle and its occupants when he has 
specific articulable facts which, taken together with rational
inferences therefrom, lead him to conclude that the person detained is, has
been, or soon will be engaged in criminal activity.  Brother v. State, 166 S.W.3d 255, 257 (Tex. Crim. App.
2005).  With that said, we turn to the
evidence of record.     

            Officer David Mora testified that at
approximately 2:00 to 3:00 a.m. on January 18, he observed a vehicle parked at
the drive-through window of a Taco Bell restaurant.  The business was closed, and its lights were
out. He knew that a burglary had been committed at a Chicken Express restaurant
half a block away two days earlier and that entry was gained via a
drive-through window.  He also knew from
his dispatcher that there had been four or five burglaries reported within the
last several hours, which number was rather unusual.  Moreover, many of them involved gaining entry
by breaking windows or prying open doors. 
Thus, he decided to investigate the matter.

            When the officer drove onto the
parking lot of the restaurant, the other vehicle drove away.  Mora then activated his lights and stopped
the car.  Inside of it were three males,
including appellant, none of whom were carrying any identification.  Several minutes later, there came a broadcast
over Mora’s radio about a green sport utility vehicle occupied by three or four
persons and those individuals had been involved in a  burglary. 
Mora heard the report and realized that the vehicle he had stopped
matched the description of the vehicle in the broadcast.  

               
In Klare v. State, 76 S.W.3d 68, 77 (Tex. App.–Houston [14th Dist.]
2002, pet. ref’d), the court determined that the lateness of the hour, the fact
a car was parked behind a closed shopping center, and prior burglaries in the
area alone were not sufficient to provide reasonable suspicion for
detention.  However, here we have  additional factors for the officer’s
consideration.  They include the location
of the parked vehicle being at the drive-up window of a closed business as
opposed to merely being in the parking lot and the fact that only two days
previously at a nearby location, a fast food restaurant was burglarized via
entry through the drive-up window. 
Moreover, the lights of the business were extinguished at the time.  There was also a rash of burglaries occurring
that night involving pry bars and breaking windows.  Also, the vehicle pulled away when the officer
drove up, suggesting that appellant and his colleagues had the car’s motor
running.  We believe these facts, taken
as a whole, are sufficient to provide the officer with reasonable suspicion to
believe that criminal activity was occurring or about to occur.  See Amorella v. State, 554 S.W.2d 700, 702-03 (Tex. Crim.
App. 1977) (finding reasonable suspicion when a car was parked next to a closed
store late at night in a high crime area with the motor running and its trunk
open, and the car drove away as the officer approached); Cronin
v. State, No.
03-04-00266-CR, 2005 Tex. App. Lexis 10450,
at *15-16 (Tex. App.–Austin December 16, 2005, no pet.) (released for
publication) (finding reasonable suspicion when the officer saw a pickup truck
drive slowly out of the parking lot of a business that had been closed for
several hours, the truck appeared to come from behind the building, the officer
had never seen vehicles in the parking lot after the restaurant was closed, it
was late at night, and windows of a neighboring business had been broken five
weeks earlier); Holland v. State, No. 05-04-00308-CR, 2004 Tex. App. Lexis 7401, at *7-8 (Tex. App.–Dallas
August 18, 2004, no pet.) (not designated for publication) (finding reasonable
suspicion due to a vehicle being parked at a late hour at a closed shopping
center and car wash where there had been burglaries and the behavior of the
vehicle in driving forward and backward). 
Given these circumstances, the officer had reasonable suspicion that
crime was afoot, and the trial court did not err in denying the motion to
suppress.

            Sufficiency of the
Evidence of Delinquent Conduct

            Appellant next argues that the
evidence was factually insufficient to show that he was a participant in the
burglary because no one saw his face, there was no forensic evidence, and no
stolen property was found on his person or in the vehicle in which he was
riding.  We disagree.

            Although juvenile proceedings are
civil matters, the standard applicable in criminal matters is used to assess
the sufficiency of the evidence underlying a finding that the juvenile engaged
in deliquent conduct.  In
re I.A.G., 297 S.W.3d
505, 507 (Tex. App.–Beaumont 2009, no pet.); In re L.A.S., 135 S.W.3d 909, 913-14 (Tex. App.–Fort
Worth 2004, no pet.); In re M.C.L., 110 S.W.3d 591, 594 (Tex. App.–Austin
2003, no pet.).  This is of import since
the Court of Criminal Appeals recently negated the existence of a factual
sufficiency review in criminal matters.  See
Brooks v. State, 323
S.W.3d 893, 912 (Tex. Crim. App. 2010). 
Since then, other courts have held that only the legal sufficiency
standard applies in juvenile proceedings.  In re M.C.S., 327 S.W.3d 802, 805 (Tex. App.–Fort Worth 2010, no
pet.); see
also In re M.L.C, No. 11-09-00081-CV, 2011 Tex. App. Lexis 598, at *1 (Tex. App.–Eastland
January 27, 2011, no pet.) (citing M.C.S. and applying only the standard
applicable to questions of legal sufficiency). 
And, rather than amend the nature of his issue in his supplemental brief
(that he filed after Brooks), appellant simply requested that we apply the civil factual
sufficiency standard.  This we decline to
do given Brooks, M.L.C., and
M.C.S. and, therefore,
find that appellant has waived his complaint.[2]  

            Sufficiency
of the Evidence to Support Disposition

            Finally, appellant contends the
evidence is factually insufficient to support the trial court’s order
committing him to TYC.  We again
disagree.

            Unlike findings that a juvenile
engaged in delinquent conduct, disposition orders are subject to a factual
sufficiency review, and in conducting that review, we apply the civil standard.  In
re J.P.R., 95 S.W.3d
729, 731 (Tex. App.–Amarillo 2003, no pet.). 
That standard is discussed in Maritime Overseas Corp. v.
Ellis, 971 S.W.2d 402,
406-07 (Tex. 1998) and Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965), to
which we refer the parties.

            Next, to place a child outside of
his home or to commit him to TYC, the factfinder must
determine that 1) it is in the child’s best interests, 2) reasonable efforts
have been made to prevent or eliminate the need for the child’s removal from
the home and to make it possible for the child to return to the home, and 3)
the child cannot be provided the quality of care and level of supervision that
it needs to meet the conditions of probation in the home.  Tex.
Fam. Code Ann. §54.04(i)(1)(A),
(B) & (C) (Vernon Supp. 2011). 
According to appellant, the evidence is factually insufficient to show
that he cannot be provided the quality of care and level of supervision he
needs in the home.  Therefore, we address
only that element since it was the only one briefed.

            The record contains evidence that 1)
during a three-year period, appellant was on probation twice and had eight
referrals for acts of delinquent conduct, five of which were criminal offenses
and the others for probation violations, 2) while on probation, appellant had
fourteen positive tests for marijuana and one positive test for cocaine, 3)
appellant did not complete substance abuse counseling, the Drug Court program,
the Star IV program, or the managed care program, 4) appellant did complete and
did well in programs with a secure, structured environment such as the Bridge
program, a residential long-term treatment program, and the residential
long-term aftercare program; however, he re-offended after completion of those
programs, 5) appellant’s program options in Lubbock County had been exhausted
and juveniles do not generally benefit from repeating them, 6) appellant was a
“follower” who was influenced by his “negative peers,” drug use, and poor
decision-making skills but improved in a structured environment, 7) appellant
would be a poor influence on other youths undergoing treatment in various local
programs if he was to attend them, 8) appellant’s parents provided insufficient
supervision when he was at home, 9) appellant was running out of time because
he would soon be considered an adult, 10) the TYC had more resources to teach
appellant proper social and adult living skills and to help with his academic
needs,[3]
and 11) appellant continued to relapse into misbehavior when in his parent’s
custody, despite his parents having taking parenting classes.  The foregoing is evidence from which the
trial court could have found that the child cannot be provided the quality of
care and supervision he needs at home to meet the conditions of probation.  See In re K.L.C., 972 S.W.2d 203, 206 (Tex. App.–Beaumont 1998, no pet.) (finding the evidence legally sufficient when there was no
evidence that the juvenile’s parents would supervise her as needed to meet the
conditions of probation after failing to do so regarding home detention).  Admittedly, there was evidence that
appellant’s mother had suffered and recovered from health problems and that his
father modified his work schedule to enable him to be home on weekends.  Yet, a factfinder
need not accord those changes much weight when the juvenile is unwilling to be supervised, and the record more than supports the conclusion
that appellant refuses to be supervised. 
Simply put, the evidence underlying the trial court’s decision is not
weak.  Nor does the evidence suggesting
that appellant could obtain the requisite supervision and care at home overwhelm
that to the contrary.  Accordingly, we
cannot accept the contention that the trial court’s finding lacks factually
sufficient evidentiary support.  

            All issues raise by appellant are
overruled and the judgment is affirmed. 

 

                                                                                    Brian
Quinn 

                                                                                    Chief
Justice

             












[1]John T. Boyd, Senior Justice, sitting by assignment.





[2]Yet,
even if the civil factual sufficiency test was applicable, our review of the
record would lead us to conclude that the evidence of record satisfied it.  It consisted of an officer identifying
appellant’s jacket, lettering thereon, and shoes as being those worn by one of
the burglars captured on video, the similarity between the SUV used at the
burglary and that in which appellant was found, the presence of a pry bar in
the SUV with yellow on its tip akin to that found on the door of the
burglarized business, and the presence of broken glass in the SUV.  Whether to accept the credibility of the
witnesses was for the jury to decide.  However,
the evidence of appellant’s involvement in the burglary was neither weak nor
overwhelmed by the totality of any contrary evidence.





[3]Appellant
was being schooled at home by his mother after he walked out of (and thus was
expelled from) the alternative school or academy in which he was enrolled.